**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BRANDIN OLIVER, on behalf of
himself and all others similarly situated**                                  **PLAINTIFF**

**v.**                                          Civil Action No.:  1:24cv180HSO-BWR

**MOBILE MEDIC AMBULANCE SERVICE, INC.**                          **DEFENDANT**

---

**CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF FEDERAL
WARN ACT 29 U.S.C. § 2101, *ET SEQ.* AND FAIR LABOR STANDARDS ACT 29 U.S.C.
§ 201, *ET SEQ.***

---

**COMES NOW**, Plaintiff, Brandin Oliver, and files this Class and Collective Action Complaint against Defendant Mobile Medic Ambulance Service, Inc. on his own behalf and on behalf of over fifty other employees, challenging Defendant's violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act") and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").

<u>**PARTIES**</u>

1.      Plaintiff, Brandin Oliver, is an adult resident of Mississippi.  Plaintiff worked for Mobile Medic Ambulance Service, Inc. prior to his termination on May 24, 2024.

2.      Plaintiff brings this lawsuit as a Rule 23 class action on behalf of all affected employees who were employed by Mobile Medic Ambulance Service, Inc. and were terminated within the ninety (90) days prior to May 24, 2024.

3.      Plaintiff likewise brings this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all similarly situated employees who were or are employed by the Defendant.

4.      Defendant, Mobile Medic Ambulance Service, Inc. ("Mobile Medic") is a Corporation formed under the laws of the State of Delaware.  Mobile Medic's headquarters or principal place of business is located in the State of Colorado.  Mobile Medic has operated in Mississippi under a Certificate of Authority from the Secretary of State in Mississippi since at least November of 1992.  Mobile Medic can be served with process by and through its agent, Corporation Service Company, 109 Executive Suite Drive, Suite 3, Madison, MS 39110.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

6.      This Court has personal jurisdiction over Defendant, Mobile Medic, because Mobile Medic conducts substantial business operations in the State of Mississippi.  Further, this Court may exercise personal jurisdiction over Mobile Medic because the personnel decisions giving rise to the wrongful employment actions that are the subject of this suit were made by Mobile Medic employees who work in Mississippi.  Moreover, this Court may exercise personal jurisdiction over Mobile Medic because Mobile Medic has operated under a Certificate of Authority from the Mississippi Secretary of State, as discussed in Miss. Code Ann. § 79-4-15.05(b).

## FACTUAL ALLEGATIONS

7.      Mobile Medic provides ambulance and other medical services in the state of Mississippi, including Harrison and Hancock counties, among others.

8.      Upon information and belief, Mobile Medic also provides ambulance and other medical services in other states.

9.      As late as March of 2024, Mobile Medic employed more than one hundred (100) full-time employees.

2

10.     Mobile Medic provided ambulance and other medical services to residents in Harrison and Hancock County from its centralized location in Gulfport (the "Gulfport Location").

11.     The dispatch center and all management personnel who oversaw the Mobile Medic employees that worked in Harrison and Hancock counties worked at the Gulfport Location.

12.     Plaintiff worked for Mobile Medic as a paramedic up until his termination on May 24, 2024.

13.     Plaintiff was based out of Mobile Medic's Gulfport Location.

14.     All of Plaintiff's work assignments were assigned from the Gulfport Location.

15.     Plaintiff report to and was managed by employees who worked at the Gulfport Location.

16.     More than seventy (70) employees were based out of the Gulfport Location of Mobile Medic.

17.     These employees received their work assignments from the Gulfport Location and were managed by employees who worked at the Gulfport Location.

18.     Within thirty (30) days prior to May 24, 2024, Mobile Medic terminated more than fifty (50) employees who were based out of the Gulfport Location, including Plaintiff.

19.     Likewise, within ninety (90) days prior to May 24, 2024, Mobile Medic terminated more than fifty (50) employees who were based out of the Gulfport Location, including Plaintiff.

20.     Mobile Medic did not provide Plaintiff nor any of the other employees who were laid off either within thirty (30) or ninety (90) days prior to May 24, 2024, sixty days' worth of advance notice.

21.     At all relevant times, Mobile Medic employed 100 or more employees, exclusive of part-time employees, (i.e., those employees who had worked few than 6 of the 12 months prior

to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

22.     Thus, Mobile Medic is subject to the advance notice requirements as set forth in 29 U.S.C. § 2102.

23.     As such, Mobile Medic's failure to provide the requisite sixty days' worth of notice amounts to a violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

*FLSA Allegations*

24.     Mobile Medic is a business enterprise that generates more than $500,000 in annual revenue.

25.     Plaintiff and all other employees of Mobile Medic frequently worked more than forty (40) hours per week.

26.     Mobile Medic instituted a retention bonus policy whereby its employees would be paid a retention bonus so long as he or she stayed the requisite amount of time.

27.     For example, Plaintiff was paid a $15,000 retention bonus, so long as he stayed employed for one year from the date of the origin of the agreement.

28.     Mobile Medic paid the retention bonuses to its employees in installments as they met certain thresholds.

29.     For example, Plaintiff was paid his $15,000 retention bonus in four payments, starting at the end of 2021 and ending in approximately October of 2022.

30.     Each employee was entitled to the bonus so long as he or she stayed the requisite amount of time.

31.     These bonuses, which were labeled as "Retention Pay" on each employee's pay stub, were used to entice all Mobile Medic's employees to stay employed with Mobile Medic.

32.     Because these retention bonuses were promised beforehand by Mobile Medic and earned by the employees, such as Plaintiff, by staying employed at Mobile Medic the requisite length of time, the retention bonuses are nondiscretionary.

33.     During the period of time Plaintiff earned the retention bonus, he frequently worked more than forty (40) hours per week.

34.     Mobile Medic paid Plaintiff and all other employees overtime for their hours reported on their timesheets in excess of forty (40) per week.  However, Mobile Medic failed to include the employees' nondiscretionary, retention bonuses into its calculation of each employee's "regular rate of pay" – as mandated by 29 U.S.C. § 207(e).

35.     Once the retention bonus thresholds were met and the bonuses were paid, Mobile Medic was required to apportion the bonuses over the workweeks of the period that the bonuses were earned.

36.     Mobile Medic did not apportion the bonuses over the weeks they were earned, and thus, did not provide Plaintiff with the additional overtime compensation he is owed for those weeks the bonus was earned.

37.     Thus, there were many weeks where Plaintiff worked more than forty (40) hours but Mobile Medic failed to include the apportioned retention bonus into the calculation of his "regular rate of pay."

38.     Further, Plaintiff was paid "stipends" as an incentive for covering additional shifts when needed.

39.     For example, if Plaintiff worked an additional shift, he might be paid an additional $300 as a bonus.

40.     These payments as labeled as "stipend" on each employee's paystub.

41.     Plaintiff frequently worked more than forty (40) hours per week on weeks he was paid a "stipend."

42.     However, Mobile Medic failed to include the "stipend" payments into the calculation of Plaintiff's "regular rate of pay."

43.     Mobile Medic likewise paid sign on bonuses to its employees.

44.     These sign-on bonuses were earned over time and required the employee to stay employed with Mobile Medic for a certain period of time.

45.     Mobile Medic failed to include the apportioned sign on bonuses into the calculation of its employees "regular rate of pay" and pay each employee the additional amount of overtime compensation due.

46.     Again, Mobile Medic paid Plaintiff and all other employees overtime for their hours reported on their timesheets in excess of forty (40) per week.  However, Mobile Medic failed to include the employees' nondiscretionary, retention, stipend, and sign-on bonuses into its calculation of each employee's "regular rate of pay" – as mandated by 29 U.S.C. § 207(e).

47.     By neglecting to include the retention bonuses, stipend pay, and sign-on bonuses into each employee's "regular rate of pay," Mobile Medic implemented a continuous and systematic process and procedure which deprived Plaintiff and all other non-exempt, hourly wage employees of the overtime they are due pursuant to 29 U.S.C. § 207.

48.     Mobile Medic knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA, and Mobile Medic was aware of the FLSA's overtime compensation requirements.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

### Gulfport Location Class

All employees of Mobile Medic that were based out of, received work assignments from, or were managed by employees that worked at the Gulfport Location of Mobile Medic and suffered an employment loss within the 90 days before May 24, 2024 and were not provided advance notice.

50.     Numerosity – Fed. R. Civ. P. 23(a)(1).    The Class contains more than fifty individuals, the joinder of which in one action would be impracticable.    The exact number or identification of the Class Members is presently unknown.    The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

51.     Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).    The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

a.     Whether the Class Members were employees of the Defendant;

b.     Whether Defendant gave the requisite 60 days' advanced written notice;

c.     Whether Defendant can avail itself of any affirmative defenses;

d.     Whether the proposed class has enough members for this class action to proceed;

e.     Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

52.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

53.    Typicality – Fed R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

54.    Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

55.    Superiority – Fed. R. Civ. P. 23(b)(3).  This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts.  Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COLLECTIVE ACTION ALLEGATIONS

56.    Plaintiff brings this action pursuant to the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* on his own behalf and as representative of individuals similarly situated who are former and current employees of Mobile Medic.

57.    Defendant Mobile Medic subject all of its hourly, nonexempt employees, including Plaintiff and the Collective Members, to its policy of failing to property calculate and pay the employees' overtime wages.

8

58.    At all relevant times, Plaintiffs and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Mobile Medic's decision, policy, plan, and common program, practices, procedures, protocols, routines, and rules of failing to pay Plaintiffs and the Collective Members all overtime wages required by 29 U.S.C. § 207(a).

59.    Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.  Specifically, all non-exempt, hourly wage employees are entitled to have any nondiscretionary bonuses included in their regular rate calculation.  Mobile Medic systematically failed to apportion the bonuses payments made to all hourly, non-exempt employees into their regular rate calculation – thereby depriving them of the overtime compensation they are due.  Moreover, Mobile Medic systematically failed to include any stipend bonuses paid to all hourly, non-exempt employees into their regular rate calculation – thereby depriving them of the overtime compensation they are due.

60.    The Collective Members perform or have performed the same or similar work as Plaintiff.

61.    Mobile Medic's Refunds' failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiffs or the Collective Members.

62.    Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula.  The claims

of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Mobile Medic that caused harm to all the Collective Members.

63.     Mobile Medic was aware or should have been aware that federal law prohibited them from not paying their employees all overtime wages as required by the FLSA.

64.     Mobile Medic's unlawful conduct has been widespread, repeated, and consistent.

65.     This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

66.     Upon information and belief, the individuals similarly situated to Plaintiff contains more than one hundred (100) individuals. The exact number or identification of similarly situated employees is presently unknown. The identity and number of the employees is ascertainable and can be determined from Mobile Medic's records.

67.     Notice can be provided to the Collective Members by First Class Mail to the last address known to Mobile Medic, via email at the last known email address known to Mobile Medic, and by text message to the last known telephone number known to Mobile Medic.

## COUNT I – VIOLATION OF THE FEDERAL WARN ACT

68.     Plaintiff, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

69.     Plaintiff and other affected employees who have worked for Mobile Medic are entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 *et. seq.*

70.     Defendant is subject to the notice and back pay requirements of the federal WARN Act because Mobile Medic is a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate

work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) and(B).

71.     Plaintiff, and all other similarly situated employees, were not provided any advance notice of their job losses.

72.     Defendant engaged in conducting a plant closing or mass layoff but has not provided affected employees with the required notice, in violation of the federal WARN Act.

## COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT

73.     Plaintiff, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

74.     By failing to include Plaintiff and all other hourly, nonexempt employees' nondiscretionary pay into the calculation of each employee's "regular rate of pay," Mobile Medic has failed to pay the required overtime compensation as mandated by 29 U.S.C. § 207.

75.     Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all overtime wages that have not been paid, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

76.     Mobile Medic knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA.

77.     Mobile Medic was aware of the FLSA's overtime compensation requirements.

78.     As a result of Mobile Medic's failure or refusal to pay Plaintiff and the Collective Members the overtime compensation deserved, Mobile Medic violated 29 U.S.C. § 207(a). Plaintiffs and the Collective Members are therefore entitled to compensation of the overtime compensation shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**JURY DEMAND**

79.     Plaintiff requests a trial by jury on these claims.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests this Court enter the following relief:

  a.  Declare and find that the Defendants have violated the federal WARN Act, 29 U.S.C. § 2101 *et seq.*;

  b.  Declare and find that the Defendants have violated the FLSA, 29 U.S.C. § 201 *et seq.*;

  c.  Certify this case as a class action;

  d.  Certify this case as a collective action;

  e.  Award compensatory damages and penalties, in an amount according to proof;

  f.  Award liquidated damages;

  g.  Award pre- and post-judgment interest;

  h.  Award reasonable attorneys' fees, costs, and expenses; and

  i.  Award any and all additional relief the Court may deem appropriate.


Respectfully Submitted,

**BRANDIN OLIVER**

By:  /s/ William "Jack" Simpson
William "Jack" Simpson, MBN 106524
**LANGSTON & LOTT, PLLC**
100 South Main Street
Post Office Box 382
Booneville, MS  38829-0382
Telephone: (662) 728-9733
Facsimile: (662) 728-1992
Email: jsimpson@langstonlott.com